United States Court of Appeals,

Fifth Circuit.

No. 91–3634.

William D. LLOYD, Plaintiff–Appellant, Cross-Appellee,

v.

GEORGIA GULF CORPORATION, Defendant–Appellee, Cross-Appellant.

June 2, 1992.

Appeals from the United States District Court for the Middle District of Louisiana.

Before SMITH and EMILIO M. GARZA, Circuit Judges, and KENT,[*] District Judge.


SAMUEL B. KENT, District Judge:

William D. Lloyd sued his former employer, Georgia Gulf Corporation (Georgia Gulf), claiming that Georgia Gulf terminated him because of his age in violation of the Louisiana Age Discrimination in Employment Act (LADEA), La.Rev.Stat.Ann. § 23:971, *et seq.,* and that Georgia Gulf unlawfully demanded that he return company stock he had purchased through an employee stock plan. After the liability portion of a bifurcated jury trial, the jury found in favor of Lloyd on both claims. The district court granted Georgia Gulf's Motion for Judgment Notwithstanding the Verdict (JNOV) on both claims. Pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure, the district court granted a conditional new trial. Lloyd appeals these rulings, along with an evidentiary ruling made by the district court during trial. Georgia Gulf filed a cross-appeal from an evidentiary ruling.


I.

BACKGROUND

Lloyd had been employed as a chemical engineer with Georgia Pacific Corporation (Georgia Gulf's predecessor) since 1971. On January 1, 1985, Georgia Pacific sold all its chemical plants to

[*]District Judge of the Southern District of Texas, sitting by designation.

Georgia Gulf, a new company formed by former Georgia Pacific executives.

At the time of his discharge in July, 1986, at the age of 56, Lloyd was production manager of the methanol-ammonia unit, a mid-level management position, at Georgia Gulf's plant in Plaquemine, Louisiana. On July 18, 1986, the plant manager, Tom Marshall, met with Lloyd. Marshall offered Lloyd an early retirement package, which included enhancements to his service and age for purposes of pension calculation. Lloyd was told that if he did not accept the early retirement offer, he would be terminated. As part of the deal, Lloyd would have been required to sign a release promising not to sue Georgia Gulf. Lloyd requested greater enhancements to the retirement package, which were denied. After he rejected the offer, Lloyd was terminated. He was replaced four months later by a 33 year old man.

Through an employee stock plan, Lloyd had purchased 1300 shares of Georgia Gulf stock. Pursuant to the plan, if an employee was terminated before the stock had vested, the employee would be required to sell the stock back to the company at the purchase price. At the time of his termination, Lloyd's shares had not vested under the terms of the plan and, consequently, he was required to sell them back to Georgia Gulf.

## II.

## STOCK CLAIM

It is clear from the record that Lloyd's stock claim created a great deal of confusion from the inception of this litigation. Nevertheless, the district court allowed this cause of action to be presented to the jury. Although the jury found in favor of Lloyd on this claim, the district court granted Georgia Gulf's motion for JNOV without explanation.

The stock claim is based on a Louisiana Supreme Court case, *Morse v. J. Ray McDermott &*

*Co., Inc.,* 344 So.2d 1353 (La.1977).[1]  The plaintiff in *Morse* had earned an award through his employer's supplemental compensation plan, but had not received the entire award before he was fired.  When the plaintiff was fired, the employer refused to waive the plan's non-termination requirement, which resulted in the forfeiture of "already-earned compensation."  *Id.* at 1367.[2]  The *Morse* court ruled that the employer's failure to waive the plan's non-termination requirement constituted an abuse of a legal right.  *Id.* at 1369.  This ruling was based on the policy behind the Louisiana wage forfeiture law[3], and general notions of justice and fair play.  *Id.*

In *Cornet v. Cahn Electric Company, Inc.,* 434 So.2d 1052 (La.1983), the Louisiana Supreme Court limited the *Morse* holding to cases involving forfeiture of *wages.*  In *Cornet,* the plaintiff was denied his interest in a retirement investment fund when he quit his job before he was eligible for retirement.  The court noted that the plaintiff

> was paid his regular salary and participated in the company's regular retirement and profit sharing plans.  The funds contributed to the joint venture were clearly above and beyond [the plaintiff's] wages.  There is no evidence in the record to indicate that ... [the plaintiff] would have received additional wages had he not joined the joint venture.

*Id.* at 1056.  The *Cornet* court distinguished *Morse* by concentrating on the fact that the forfeiture in *Morse* involved actual wages for services performed by the employee.  *Id.*  The *Morse* case was also distinguished on the grounds that the primary purpose of the *Morse* plan was to compensate employees, while the primary purpose of the *Cornet* plan was to encourage continued employment with the company.  *Id.*

---

[1]The controlling opinion, which was rendered after rehearing, begins at 344 So.2d 1363.

[2]The *Morse* court also characterized the forfeited award as "delayed compensation, *or pay, for performed services.*"  *Id.* at 1368 (emphasis added).

[3]The Louisiana wage forfeiture law provides, in part:  "No person ... shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed ... but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation."  La.Rev.Stat.Ann. § 23:634.

The abuse of rights doctrine set out in *Morse* has absolutely no application to this case.[4] We find that the facts of the instant case are remarkably similar to those found in *Cornet.* There is no indication in the record that Georgia Gulf's employee stock plan was meant to compensate employees for their services. In fact, the stated purpose of the stock plan was to provide employees with "additional incentives to achieve the Company's objectives through participation in its success and growth and by encouraging their continued association with the Company." There is also no evidence that Lloyd's salary and/or employee benefits would have changed had he decided not to take part in the stock plan. Simply put, by refusing to waive the vesting requirement, Georgia Gulf did not forfeit any wages that Lloyd had earned through the performance of his job duties. His stock claim has absolutely no basis in the law, and should not have been presented to the jury. Therefore, we reverse the JNOV on Lloyd's stock claim, and remand it to the district court with instructions that this cause of action be dismissed with prejudice.

## III.

## AGE DISCRIMINATION CLAIM

A. *Controlling Law and Standard of Review.*

Although Lloyd's age discrimination claim is based on the Louisiana statute rather than the federal statute, we will apply federal case law construing the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1988). *See DeLoach v. Delchamps, Inc.,* 897 F.2d 815, 818 (5th Cir.1990). When reviewing a district court's ruling on a motion for JNOV, we apply the same test as the district court, without deference to its decision. *Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 95 (5th Cir.1991) (citation omitted). The pertinent test provides that "[i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court

---

[4]In addition to this conclusion, we should also point out that neither the Louisiana Supreme Court, nor the Louisiana courts of appeal, have applied the abuse of rights doctrine since the *Morse* case in 1977. *Truschinger v. Pak,* 513 So.2d 1151, 1154 (La.1987). Furthermore, it clear that the abuse of rights doctrine is not even a fully established legal concept in Louisiana. *See, e.g., Joseph v. Zachary Manor Nursing Home,* 729 F.Supp. 41, 43 (M.D.La.1990); *Clark v. Glidden Coatings & Resins,* 666 F.Supp. 868, 872 (E.D.La.1987).

believes that reasonable men could not arrive at a contrary verdict, granting of the motion[ ] [for JNOV] is proper." *Boeing Company v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc). Therefore, the district court in the instant case should only be affirmed if the facts and inferences could not lead reasonable people to conclude that Georgia Gulf terminated Lloyd because of his age.

B. *Age Discrimination.*

Courts have fashioned special rules of proof for employment discrimination cases. Initially, the plaintiff must establish a *prima facie* case of unlawful discrimination. If the plaintiff does this, the burden shifts to the employer to articulate legitimate, nondiscriminatory reasons for the adverse employment decision. Once this occurs, the burden shifts back to the plaintiff to show that the employer's articulated reasons are pretextual. *See McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Thornbrough v. Columbus and Greenville R. Co.,* 760 F.2d 633 (5th Cir.1985). Although the traditional burden shifting analysis applied at the trial of this case, we need not discuss each party's proof offering at the various stages of the analysis.

> Where ... the case has been fully tried on the merits, the adequacy of a party's showing at any stage of the ... ritual is of no consequence. We are simply to determine whether the record contains evidence upon the basis of which a reasonable trier of fact could have concluded as the jury did.

*Elliott v. Group Medical & Surgical Service,* 714 F.2d 556, 564 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

There are two ways an employment discrimination plaintiff can prevail following the employer's articulation of legitimate reasons for the adverse employment decision. Plaintiffs can prove pretext "either directly by [showing] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

C. *Lloyd's Evidence.*

This case, like most employment discrimination cases, is devoid of any direct evidence that Georgia Gulf fired Lloyd because he was too old. While there is absolutely no "smoking gun" in the record to show that Georgia Gulf's stated reasons were mere pretexts for age discrimination, the record does contain some evidence to support Lloyd's contention that a discriminatory reason more likely motivated Georgia Gulf, the first method of proving pretext under *Burdine*. During his deposition, the plant manager who fired Lloyd, Tom Marshall, stated that, in order to achieve the company's expansionist goals, "it behooved [Georgia Gulf] to start hiring managers, good people who looked like they had a future, without any specific need for them at the moment." While this statement is certainly incriminating, we conclude that a reasonable trier of fact could not infer from this comment alone, which Georgia Gulf has convincingly explained was made in reference to a period of time *after* Lloyd's termination, that Georgia Gulf was more likely motivated by a discriminatory reason.

Despite Lloyd's inability to succeed under the first *Burdine* method, we feel that he did present sufficient evidence at trial which could lead a reasonable juror to conclude that Georgia Gulf's stated reason for terminating him was unworthy of credence, the second method of proving pretext under *Burdine*. Through Lloyd's immediate supervisors, Tom Marshall and Edward Schmitt, and two other Georgia Gulf executives, Henry Lloyd and Dennis Chorba, Georgia Gulf attempted to show that Lloyd was terminated because of consistently poor performance. These four men testified to numerous examples of Lloyd's poor performance. Marshall testified that he terminated Lloyd because he had lost confidence in Lloyd's ability, and that his doubts had persisted for months before he finally decided to fire Lloyd. Ultimately, Marshall felt that the job could be done better, and that it would benefit the company to replace Lloyd.

Lloyd presented the jury with a number of matters which, taken together, could lead to the inference that Georgia Gulf did not fire him because his work was unsatisfactory. Despite the

extensive testimony regarding Lloyd's unsatisfactory performance, Georgia Gulf failed to produce a single document to show that Lloyd's supervisors were unsatisfied with his work. At the time of his termination, nothing in Lloyd's employment file reflected negatively upon his performance. Georgia Gulf admits to the lack of documentation[5], but argues that it was Marshall's philosophy not to generate written reprimands, warnings, and the like for management level employees.[6]

We have very recently held that, when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext. *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 124 (5th Cir.1992).[7] *See also Hansard v. Pepsi–Cola Metropolitan Bottling Co.,* 865 F.2d 1461, 1465 (5th Cir.1989) ("where the only evidence of intent is oral testimony, a jury could always choose to discredit it.") (quoting *Bhaya v. Westinghouse Elec. Corp.,* 832 F.2d 258, 262 (3d Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 207 (5th Cir.1986). The jury heard a great deal of testimony regarding Lloyd's performance problems, but concluded that he was terminated in violation of the LADEA. This conclusion is reasonable in

---

[5]Ed Schmitt, Lloyd's immediate supervisor at the time of his termination, testified that he had written a memorandum documenting a meeting during which Lloyd was advised of some of his performance problems. However, it is clear that the document was not completed until *after* Lloyd was fired. That Georgia Gulf fails to even address this document in its appellate briefs leads us to speculate that the document was prepared after the fact, and in anticipation of possible litigation.

[6]It should also be noted that Lloyd's employment file contained letters indirectly commending him for the performance and safety records of his unit.

[7]Although *Walther* was a disparate impact case rather than a disparate treatment case, the employer stated that the plaintiff was included in the reduction in force because of his poor performance. Therefore, the plaintiff was permitted to prove pretext by showing that the articulated reason for his termination was unworthy of credence. Walther's situation was very similar to Lloyd's. He was a long-time regional office manager who had received regular promotions and pay raises throughout his career. While Walther's employer stated that he was part of the reduction in force because his performance was unsatisfactory, there was no specific evidence in his "personnel file indicating any previous dissatisfaction with his performance ... [and his employer] could only "report' that Walther's performance had been weak in certain areas." *Walther,* 952 F.2d at 124. As a result, we held that the "jury need not have done so, but it could reasonably infer that this was "an after the fact inspiration triggered by the necessity of fending off litigation.' " *Id.* (quoting *Graefenhain v. Pabst Brewing Co.,* 827 F.2d 13, 21 (7th Cir.1987).

light of the complete lack of documentation to support Georgia Gulf's assertion that Lloyd's performance was unsatisfactory.

Underscoring the lack of documentation is the fact that Georgia Gulf apparently failed to follow its own disciplinary procedures. Georgia Gulf's Operating Policy Manual states that problems like poor performance "normally warrant progressive disciplinary steps" before an employee can be terminated for continued violations.[8] Tom Marshall testified that there are exceptions to this policy, and that he felt he had followed the policy by informing Lloyd of some of his performance problems. However, he also testified that utilization of the progressive disciplinary policy is counterproductive, thereby implying that he did not follow the policy. From this, the jury could have reasonably inferred that Marshall would have attempted some progressive disciplinary measures before firing Lloyd if he was truly concerned with Lloyd's performance.

That Marshall and Schmitt had trouble remembering specific examples of Lloyd's allegedly poor work performance could also have contributed to the jury's conclusion. Furthermore, on cross-examination, Marshall admitted that some of the specific events that he testified had contributed to his decision to terminate Lloyd were not brought to his attention until *after* Lloyd had been dismissed. Finally, Georgia Gulf's demand that, as part of the retirement package, Lloyd sign a waiver promising not to sue Georgia Gulf could also have raised some doubt in the minds of the jury about the proffered reasons for Lloyd's termination.

In order to satisfy the second *Burdine* method for proving pretext, Lloyd must show that Georgia Gulf's proffered reason for terminating him is unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. This is not to say that Lloyd can prevail simply by showing that Georgia Gulf misjudged his performance. *Id.* at 259, 101 S.Ct. at 1096–97. The ultimate issue in this case is

---

[8]Although there is some question as to whether the policy applied to Lloyd, the manual specifically makes reference to "salaried employees", and Tom Marshall testified that Lloyd was considered a "salaried employee."

whether Lloyd was a victim of intentional age discrimination. *Bienkowski v. American Airlines,* 851 F.2d 1503, 1506 (5th Cir.1988). An employment discrimination plaintiff cannot prove pretext merely by showing that his employer's

> reasons for firing him are not justified or supported by objective facts.... The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated. Even if the trier of fact chose to believe an employee's assessment of his performance rather than the employer's, that choice alone would not lead to a conclusion that the employer's version is a pretext for age discrimination.

*Id.* at 1507–08 (citations omitted). Instead, under *Burdine,* pretext can be inferred only if the trier of fact concludes that the employer's proffered reason was not the true reason for the adverse employment decision.

All of the evidence discussed above, taken together, could have led to a reasonable inference that Georgia Gulf's stated reason for terminating Lloyd, poor performance, was not the true reason for his termination. The district court admitted as much in its opinion granting Georgia Gulf's motion for JNOV when it wrote: "The record may leave one wondering why Marshall was so intent on firing Lloyd." Upon review of the entire record, we find that the jury acted reasonably by disregarding Georgia Gulf's stated reason as pretext, and finding for Lloyd.

In addition to our conclusion that the jury acted reasonably in light of the evidence presented at trial, we find that the district court's decision to grant JNOV was based on improper credibility determinations. In *Boeing,* we held that, "it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Boeing,* 411 F.2d at 375. The district court stated that Marshall "subjectively believed that Lloyd ... could not perform his job at an acceptable standard," and that the testimony of Lloyd's rebuttal witnesses lacked "probative value on the ultimate issue." Although the district court stated that these were not "credibility call[s] or weighing of the evidence", they seem to be just that. The

jury was free to believe Georgia Gulf's justification for firing Lloyd, or discount it as pretext. Because they chose the latter, and this choice was reasonable in light of the totality of the record, the district court should not have granted JNOV.

## IV.

## CONDITIONAL NEW TRIAL

Because we have decided to reverse the JNOV on Lloyd's age discrimination claim, we must also address the merits of the district court's decision to grant a conditional new trial. We review a ruling on a motion for new trial under the abuse of discretion standard. While the standard of review is the same whether the district court grants or denies the new trial, the scope of inquiry is broader when the district court grants the new trial. *Eximco, Inc. v. Trane Co.,* 737 F.2d 505, 512 (5th Cir.1984) ("The difference in our inquiry stems from our respect for the jury as an institution and from our concern that the party who initially persuaded the jury should not be stripped unfairly of a favorable decision.").

A new trial can be granted if something occurs during trial that irreparably prejudices the jury's verdict. *Id.* The district court granted the conditional new trial because the "[p]laintiff repeatedly presented evidence to the jury which had the effect of eliciting sympathy for the poor mistreated individual by the huge, rich corporation." The court gave three specific reasons for its decision.

First, the court relied on references to Lloyd's disabled mother and mother-in-law. This evidence was never objected to by Georgia Gulf, nor was it excluded by the court. The evidence came out very briefly, and very early, in the trial as part of Lloyd's family background. Lloyd's counsel simply mentioned the evidence during closing argument, without highlighting it or attempting to promote any improper conclusions.

The court also based its decision on what it perceived as improper references to the amounts earned by other Georgia Gulf managers through the employee stock plan. Although the court sustained an objection to questions regarding the precise amounts of money certain managers made through the stock plan, Lloyd's counsel noted in closing argument that some managers "made a lot of money" when Georgia Gulf repurchased their stock. Lloyd's counsel did not belabor the point, nor did he mention any specific dollar amounts. Furthermore, Georgia Gulf's Recapitalization Plan had been admitted into evidence, and the fact that Georgia Gulf repurchased its employees' stock had been referred to at various times during the trial. Therefore, it is not at all clear that Lloyd's counsel referred to evidence that had been excluded by the district court.

Finally, the district court was concerned with counsel's reference to Georgia Gulf's decision to waive the vesting requirement for Marshall, but not for Lloyd. The court's opinion states that this evidence had been excluded upon objection. However, the record is quite clear that this evidence was never objected to, and consequently, never excluded. In fact, the record shows that the district court found this evidence to be extremely relevant regarding Lloyd's stock claim.

For the foregoing reasons, we do not feel that the jury's verdict was irreparably prejudiced by the comments made on behalf of Lloyd during closing arguments. These comments referred to evidence that had been admitted during the trial, and could not have comprised more than a few seconds of the twenty-five minutes allowed for closing. The district court abused its discretion by granting a new trial. Therefore, we conclude that the jury's verdict regarding Lloyd's LADEA claim should be reinstated.

## V.

## GEORGIA GULF'S CROSS–APPEAL

Because we have reversed the JNOV, and reinstated the jury verdict on Lloyd's LADEA

claim, we must also discuss Georgia Gulf's appeal from an evidentiary ruling made during trial.[9] We review evidentiary rulings for an abuse of discretion.

Georgia Gulf sought to introduce testimony by Edward Schmitt regarding aspects of Lloyd's performance that Tom Marshall had no knowledge of when he decided to fire Lloyd. The district court ruled that, because Marshall was the only manager involved in the decision to fire Lloyd, evidence of Lloyd's performance of which Marshall was unaware was wholly irrelevant to the controlling issue in the case. We agree. Marshall's stated motivation for firing Lloyd, poor performance, could only have been based on events he knew of at the time. It was not an abuse of the district court's discretion to exclude evidence of Lloyd's performance that did not affect Marshall's decision.

## VI.

## CONCLUSION

The district court's judgment notwithstanding the verdict is REVERSED, and this case is REMANDED with instructions that Lloyd's stock claim be dismissed with prejudice, the jury's verdict on liability for age discrimination be reinstated, and the case proceed to the damages stage.

---

[9]Lloyd's appeal from an evidentiary ruling is rendered moot by our decision to reverse the JNOV and reinstate the jury verdict regarding Lloyd's LADEA claim.