**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**IPMC, INC., Defendant.**

**No. 92–CV–75183–DT.**

United States District Court, E.D. Michigan, S.D.

Sept. 30, 1993.

Beverly Hall Burns, George D. Mesritz, Miller, Canfield, Paddock and Stone, Detroit, MI, for plaintiff.

Bart M. Feinbaum, E.E.O.C., Detroit, MI, for defendant.

## OPINION AND ORDER STRIKING PLAINTIFF'S SUR–REPLY BRIEF AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

ZATKOFF, District Judge.

### I. INTRODUCTION

The Equal Employment Opportunity Commission ("EEOC") filed suit against defendant IPMC, Inc. ("defendant") alleging that defendant's decision not to hire Francis Kelly, the Charging Party ("Kelly"), violated the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et. seq.* ("ADEA"). On May 19, 1993, defendant filed its motion for summary judgment. On May 27, 1993, defendant filed its "Revised Brief in Support of Motion for Summary Judgment." The Revised Brief did not contain any additional exhibits. The EEOC did not object to defendant's filing of its Revised Brief. Therefore, this Court will accept defendant's Revised Brief.

The EEOC filed a response brief on June 1, 1993, to which defendant replied. In addi-

tion, the EEOC filed a sur-reply brief on June 15, 1993. Defendant filed a motion to strike the sur-reply brief based on the EEOC's failure to comply with the Local Rules of this District. Because the EEOC's sur-reply brief was not filed in accordance with the Local Rules of this District, it is ORDERED that the EEOC's sur-reply brief be STRICKEN. Pursuant to E.D. Mich. L.R. 7.1(e)(2), this Court will dispose of defendant's motion for summary judgment upon the briefs that the parties have submitted to this Court and without this Court entertaining oral argument on the motion. For the reasons set forth below, defendant's motion for summary judgment will be GRANTED.

## II. BACKGROUND

The Kapaco Group, Inc.,[1] and its related companies, including Detroit River Paper Company ("Detroit River"),[2] filed for bankruptcy in June 1990. On December 6, 1990, Detroit River and IPMC entered into a court-approved Asset Purchase Agreement which provided, in part, that:

> *Termination of Employees.* Before the time of closing the Debtor [Detroit River] shall terminate all of its employees, and such employees shall not become employees of IPMC until IPMC has reviewed such employees and their applications for employment and such employees have accepted employment with IPMC on IPMC's terms and conditions. It is the intention of IPMC to operate the Detroit River paper mill and IPMC will announce its own terms and conditions for employment and will receive applications for any interested existing Detroit River employees for employment. Such applications will be reviewed and such employees as required by IPMC will be employed.

Asset Purchase Agreement ¶ L, attached as Ex. 2 to defendant's Brief in Support.

After employment applications were submitted, defendant conducted interviews of active Detroit River employees and made its hiring decisions. Kelly submitted his application on March 1, 1991. Defendant interviewed Kelly on March 8, 1991, but defendant did not hire Kelly. Kelly was sixty years old at this time.

Kelly held the position of shift electrician for Detroit River. Prior to becoming a shift electrician for Detroit River, Kelly was employed as an "instrument man." Detroit River had separate departments for electricians and for instrument men. Defendant created, however, one department entitled "electrical/instrument department."

At Detroit River there were seven electricians. All seven former Detroit River electricians applied for employment with defendant. The following six were hired into defendant's electrical/instrument department:

| NAME | AGE AS OF 3/8/91 |
| --- | --- |
| Malcolm Turner | 43 |
| Benjamin Ewing | 48 |
| John Lupu | 43 |
| Kenneth Williams | 58 |
| Buford Lindsay | 56 |
| James Slovinac | 42 |

In addition, defendant hired the following people into the electrical/instrument department who were trained instrument men:

| NAME | AGE AS OF 3/8/91 |
| --- | --- |
| Eugene Johnson | 46 |
| Joseph Benso | 31 |

At the time of the March 8, 1991, hiring, defendant had decided that it would not employ as many people as Detroit River had. Defendant calculated that it would not need seven day coverage by electricians, because defendant was not going to operate the mill 24 hours a day, 7 days a week. Defendant also decided to retain only three of the four shift electricians which Detroit River employed, in light of defendant's decision to have three, rather than four, shifts at the plant. In addition, the following statistics are not disputed.

* Of the 206 former Detroit River employees, 108 (or 52%) were age 40 or over.

* Of the 162 former Detroit River employees hired by defendant, 88 (or 54.3%) were age 40 or over.

---

**1.** The Kapaco Group is not a party to this law suit.

**2.** Detroit River likewise is not a party to this law suit.

\* Of the 206 former Detroit River employees, 17 (or 8.3%) were age 60 or over.

\* Of the 162 former Detroit River employees hired by defendant, 14 (or 8.6%) were age 60 or over.

\* Detroit River employed two employees who were over 70 years of age; defendant hired both of these individuals.

In addition, while the parties disagree on whether defendant knew that business was going to be better than anticipated, it is undisputed that defendant's business was at such a volume that defendant required an additional electrician. Department Head Donald Grace directed Department Supervisor Caladrino to advertise for another electrician in April 1991. On April 24, 1991, defendant placed an advertisement in a local newspaper. On May 25, 1991, Defendant hired Michael Thomas ("Thomas"), age 35, as the new electrician. Kelly did not see the advertisement in the newspaper, and thus he did not reapply for the position.

As noted above, the EEOC has filed this suit under the ADEA alleging that defendant's March 8, 1991 decision not to hire Kelly, as well as defendant's May 20, 1991 hiring of Thomas, violated the ADEA.

## III. DISCUSSION

### A. STANDARD OF REVIEW

Defendant filed its motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. Under Rule 56, summary judgment is appropriate only where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the non-moving party." *Id.* 477 U.S. at 247, 106 S.Ct. at 2510.

### B. DEFENDANT'S FAILURE TO HIRE KELLY IN MARCH 1991.

"A plaintiff who brings a claim under the ADEA must prove that age was a determining factor in the adverse action that the employer took against him or her." *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 230 (6th Cir.1990) (citations omitted). *See also Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir.1993); *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720, 723 (6th Cir.1992); *Wooden v. Board of Ed. of Jefferson County*, 931 F.2d 376, 379 (6th Cir.1991). "This is a question of fact," *Kraus*, 915 F.2d at 230 (citation omitted), and thus there must be a genuine issue of material fact with respect to whether age was a determining factor in defendant's decision not to hire Kelly in order for defendant's motion for summary judgment to be denied.

■ Defendant, for the purposes of this motion, does not dispute plaintiff's prima facie case. Defendant's Brief in Support at 16.[3] Defendant does argue, however, that the principles enunciated by the Sixth Circuit in "reduction-in-force" cases are applicable to the case at bar. Defendant's argument is not persuasive. As of March 1991, defendant did not have a work force that could be reduced. Under the terms of the Asset Purchase Agreement, all Detroit River employees were terminated and had to apply for jobs with defendant. Defendant was not obligated to hire any of the former Detroit River employees. In early March 1991, defendant was in the process of *hiring* employees for its operations at the paper mill and not in the process of *reducing* its work force. *See Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.1990) ("A work force reduction situation

---

**3.** Defendant states in its Brief in Support that a plaintiff establishes a prima facie case by showing that: (1) he was over the age of 40; (2) he applied for an available position; (3) he was qualified for the position; and (4) after he was rejected, the employer continued to seek job applicants. Brief in Support at 15 (citing *Barnes v. GenCorp., Inc.*, 896 F.2d 1457, 1464 n. 6 (6th Cir.1990).

occurs when business considerations cause an employer to eliminate one or more positions within the company."). Therefore, this Court will treat this case as a failure to hire case.[4]

Because defendant has conceded plaintiff's prima facie case, a presumption of discrimination has been created. *Id.* at 1464–65 (citations omitted).

> A defendant can rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse action. *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir.1986). The plaintiff always carries the burden of persuasion in a discrimination case, however, and once the defendant articulates a legitimate business reason, the presumption drops from the case. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). The plaintiff then, to prevail, must prove that the defendant's proffered reason is a *pretext for discrimination. See Id.*

*Kraus*, 915 F.2d at 230 (emphasis added).[5] Finally, in some cases, "plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. *See also St. Mary's Honor Center,* — U.S. at ——, 113 S.Ct. at 2749.

Defendant makes a two prong argument in support its contention that it had legitimate, nondiscriminatory, reasons for not hiring Kelly on March 6, 1991. First, defendant relies on the statistics set forth earlier in this Opinion and states that "statistical data demonstrating an employer has treated protected and unprotected employees alike creates an inference that no discrimination occurred." Defendant's Brief in Support at 17. Second, defendant relies on the deposition testimony of Caladrino, the person who decided not to hire Kelly.[6] Caladrino testified that, in his opinion, Kelly was not as good a "troubleshooter" as the other electricians and that several incidents reflected Kelly's less-than-average understanding of electrical problems.[7] Caladrino concluded that Kelly was the least qualified out of all the former Detroit River electricians applying for the position with defendant.[8] In light of the above, this Court finds that defendant has presented sufficient evidence to rebut plaintiff's prima facie case and the presumption thus no longer exists. Therefore, this Court must determine whether the EEOC has presented sufficient evidence to permit a reasonable jury to conclude that age was a determining factor in defendant's decision not to hire Kelly. *See, e.g., Kraus*, 915 F.2d at 230.

The EEOC makes two distinct arguments in support of its contention that it has sufficient evidence to discredit defendant's explanation, thus defeating defendant's motion for summary judgment. First, the EEOC relies

---

**4.** This conclusion moots the EEOC's argument that defendant never experienced a slowdown in business and thus the reduction-in-force cases are inapposite.

**5.** In *St. Mary's Honor Center v. Hicks,* — U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Supreme Court reaffirmed these principles of law. *See* — U.S. at ——, 113 S.Ct. at 2747 (holding that presumption is dropped from case when defendant carries its burden of production); and — U.S. at ——–——, 113 S.Ct. at 2748–54 (concluding — U.S. at p. ——, 113 S.Ct. at p. 2752, that "a reason cannot be proved to be 'a pretext *for discrimination'* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original).

**6.** Caladrino also testified at his deposition that he "was told by Don Grace that we had to hire one less [electrician] than we had and we both agreed that that should be Frank Kelly." Cala-

drino dep. at 190, attached as Ex. 1 to defendant's Brief in Support. Mr. Grace has since past away. Mr. Grace was 70 years old at the time defendant made these hiring decisions.

**7.** *See* Caladrino Dep. at 33–44, 165, 175–177.

**8.** The EEOC argues that because defendant intended to have electricians cross-trained as instrument men, that Kelly could not have been the least qualified because he was the only former Detroit River electrician that had experience as an instrument man as well. However, the EEOC has not presented any evidence that challenges Caladrino's deposition testimony that when defendant hired the former Detroit River electricians defendant only considered these employees based on their skills as an electrician, and not on skills acquired in other areas of employment. Caladrino's Dep. at 179, attached as ex. D to Defendant's Reply Brief. The EEOC cannot base its case on whether defendant's selection criteria was a sound business decision.

on the affidavit of Bernard Ivory, who was Kelly's supervisor from 1986–1990. Ivory supervised Kelly when Kelly was employed both as an instrument man (1986—January 1987) and as an electrician (January 1987—June 1990) at Detroit River. Ivory also supervised the other six electricians at Detroit River who applied for jobs with defendant. Ivory Affidavit, ¶ 3, Ex. 8 to Plaintiff's Brief in Opposition. Ivory avers in his affidavit that:

> Mr. Kelly was a very competent employee. He was a good repairman and troubleshooter; he competently operated all of the equipment. Francis Kelly cause [sic] no more problems than the other employee [sic] that I supervised.

*Id.* ¶ 4.

■ Defendant argues that Ivory's affidavit should not be given any weight because "Ivory left Detroit River in June 1990 and was not involved in the decisions as to which former Detroit River employees would be hired by [defendant]." Defendant's Reply Brief at 2. Defendant's argument is not persuasive. Ivory has personal knowledge of Kelly's ability as an electrician in the paper mill as well as personal knowledge of the performances of the other electricians. Therefore, the affidavit is relevant. *Cf. Kraus,* 915 F.2d at 230 ("the evidence offered by [plaintiff's] two former co-employees is irrelevant to this case, because the affidavit fails to reference the time period at issue, and the deposition testimony was provided by someone who did not claim ever to have observed [plaintiff's] performance in the bookkeeping department.").

■ Defendant also attacks Ivory's affidavit on the grounds that the affidavit fails to establish that Ivory would have disagreed with defendant's conclusion that Kelly was the least skilled of the former Detroit River electricians. Defendant's Reply Brief at 2. As noted above, Ivory states in his affidavit that:

> Mr. Kelly was a very competent employee. He was a good repairman and troubleshooter; he competently operated all of the equipment. *Francis Kelly cause [sic] no more problems than the other employee [sic] that I supervised.* (emphasis added).

This Court agrees with defendant's assertion. Ivory's affidavit does not state either that Kelly was not the least qualified or that Kelly was more qualified than the other former Detroit River electricians. The affidavit does not state that Ivory would have hired Kelly over the other former Detroit River electricians. Ivory merely states that Kelly caused no more problems than the other former Detroit River electricians. Viewing this statement in the light most favorable to the EEOC, the nonmoving party, this Court finds that the Ivory's affidavit only tangentially touches upon how Kelly compared with the other former Detroit River electricians. The affidavit does not contain sufficient facts relating to how Kelly's skills as an electrician compared with the skills of the other former Detroit River electricians. The statement that Kelly did not cause any more trouble than the other electricians, sheds no light on the issue of Kelly's skills as an electrician *vis a vis* the other former Detroit River electricians.

■ The EEOC's second argument is based on the principle that the prima facie case, coupled with effective cross-examination of defendant, is sufficient to defeat defendant's motion for summary judgment. Specifically, the EEOC underscores the point that the situations which Caladrino references with respect to the problems Kelly had performing his job are no where to be found in Kelly's personnel file. In addition, Caladrino testified at his deposition that he did not inform Kelly's supervisor of these problems, although Caladrino did inform his own supervisor of these incidents. Moreover, the EEOC stresses that Caladrino admitted that the other electricians also had troubleshooting problems, although he could not remember any specific troubleshooting problems.

The EEOC relies on *Lloyd v. Georgia Gulf Corp.,* 961 F.2d 1190 (5th Cir.1992) for support of the proposition that when an employer's stated motivation for an adverse employment decision involves the employee's performance, but there is no supporting documentation, a jury can reasonably infer pretext. A close reading of *Lloyd* reveals, however, that the Fifth Circuit held that the lack of

supporting documentation went to the issue of whether the purported reasons was false and not to the issue of whether it also was a pretext for discrimination. *Id.* at 1195.

Indeed, the *Lloyd* case is troubling because it is in direct contravention with the Supreme Court's ruling in *St. Mary's Honor Center.* As noted previously in this Opinion,[9] the Supreme Court held in *St. Mary's Honor Center* that the proffered reason must be both false and a pretext for discrimination. As the Supreme Court noted, "Even though . . . rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination.*" —— U.S. at ——, n. 4, 113 S.Ct. at 2749, n. 4 (emphasis in the original). In *Lloyd,* the Fifth Circuit reinstated a jury verdict in favor of the plaintiff, despite the fact that the Fifth Circuit affirmed the district court's ruling that there was insufficient evidence to prove that the defendant was more likely motivated by a discriminatory reason when it terminated the plaintiff's employment. *Lloyd,* 961 F.2d at 1195. Under *St. Mary's Honor Center,* this conclusion would preclude sustaining a verdict in favor of the plaintiff, because, although the proffered reason was false, it was not a pretext for discrimination, that is, there was no finding of age discrimination.

In the case at bar, the EEOC has not challenged the existence of these alleged incidents of poor performance by arguing that they never occurred. Instead, the EEOC relies on the nonexistence of documentation to support defendant's assertion. However, even coupling the lack of documentation, Ivory's affidavit, and the prima facie case, this only reveals that there is a genuine issue of material fact with respect to whether defendant's proffered reasons were false. The EEOC still must prove that there is a genu-

ine issue of material fact regarding whether intentional discrimination occurred in this matter.

Based on all of the evidence presented to this Court, including defendant's statistical evidence,[10] this Court finds that a reasonable jury could not find that defendant's proffered reason for not hiring Kelly was either a pretext for age discrimination or that age was a determining factor in defendant's decision not to hire Kelly. Accordingly, summary judgment in favor of defendant is appropriate. Therefore, defendant's motion for summary judgment on the EEOC's complaint that defendant's failure to hire Kelly on March 8, 1991, violated the ADEA is GRANTED.

## C. DEFENDANT'S FAILURE TO HIRE KELLY FOR SUBSEQUENT OPENING

 It is undisputed that part of plaintiff's prima facie case is that plaintiff must establish that he applied for the position in question. Here, defendant argues that there is no genuine issue of material fact with respect to whether defendant applied for the subsequent opening which defendant advertised for starting April 24, 1991. The EEOC admits in its response brief that Kelly did not apply for this position. Response Brief at 11.

The EEOC does argue that defendant did not inform Kelly or anyone else on March 8, 1991, that they would not be considered for future openings. In addition, the EEOC argues that defendant admitted that it is company policy to retain application for a period of two years. However, nothing in the EEOC's argument persuades this Court that the requirement that Kelly apply for the

---

**9.** *See supra* note 5.

**10.** The EEOC challenges defendant's statistical evidence, by arguing that if one examines the persons whom defendant hired after the initial set of employees were hired in early March 1991, that the average age of these employees is approximately 33 years of age. However, as defendant aptly points out in its reply brief, its statistical evidence includes the employees hired after the initial employees were hired in March 1991. The EEOC also argues that defendant's cannot

use this statistical evidence as a bottom line defense to this action. *See Connecticut v. Teal,* 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982). While the EEOC is correct in its assertion that bottom line statistics cannot be used to preclude a suit, this evidence is nonetheless relevant as to whether there is a genuine issue of material fact regarding whether age was a determining factor in defendant's decision not to hire Kelly.

position be eliminated from the prima facie case.

Accordingly, defendant's motion for summary judgment on the EEOC's complaint that defendant's hiring of Thomas, instead of Kelly, in May 1991 violated the ADEA is GRANTED.

## IV. CONCLUSION

For all of the aforementioned reasons, defendant's motion for summary judgment as to the EEOC's complaint that defendant's failure to hire Kelly on March 8, 1991, violated ADEA is GRANTED and defendant's motion for summary judgment as to the EEOC's complaint that defendant's hiring of Thomas, instead of hiring Kelly, in May 1991, violated the ADEA also is GRANTED. Judgment shall be entered forthwith.

IT IS SO ORDERED.

### *JUDGMENT*

**IT IS ORDERED AND ADJUDGED** that this action is hereby **DISMISSED** pursuant to the Memorandum Opinion and Order dated September 30, 1993.