MARVIN, Judge.
In this action seeking to enforce LRS 23:634 against an alleged forfeiture of “wages”,[1] the plaintiff appeals a judgment rejecting his demands. We reverse.
Plaintiff sued only the employer to recover a portion of bonuses paid that plaintiff then contributed to an employee retirement investment fund created by a written contract between the employer and several employees who were selected by the employer to receive the bonuses that made up the fund. The employees who participated in the retirement investment fund (called a joint venture by defendant employer) were made defendants by the employer and in our view, correctly so, because we deem them indispensable parties. CCP 641.
Plaintiff contends the contract creating the retirement investment fund contravenes the public policy of § 634 and is void. Defendant contends that we should uphold the contract and affirm the trial court’s judgment because the bonuses paid were *835 not earned until the participating employee either retired at age 65, or before that time, died or became disabled. Both litigants rely on the recent pronouncement on the subject by the Supreme Court in Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La. 1976).
There are no real credibility issues and we are called on to interpret this contract in the light of the statute and of Morse, supra.
THE INVESTMENT FUND CONTRACT
The contract was written in 1967 by the employer’s CPA. The CPA and the executive officer of the corporation wanted to encourage, to make it more desirable, to be sure, that the participants stayed in the employ of the company until their retirement. Only selected employees were invited by the employer to participate in the fund and these employees were required to agree to contribute to the fund 70 percent of the bonuses paid them as a condition of receiving the bonuses. The bonuses paid were considered by the CPA and the corporate executive to be remuneration, something extra, to the employee, and, as the contract and invitation state, in appreciation for loyal service of the employee. The fund created by employee contributions is managed and invested by an administrative committee comprised of three persons who were named in contract. The committee members are not elected for a term. Any vacancy on the committee is to be filled by appointment by the fund participants who are not members of the committee.
Plaintiff became a party to the contract and a participant in the fund in January 1973 and received an initial bonus of $880 which he reported on his 1972 income tax as instructed by the letter of invitation. As of December 31, 1978, plaintiff’s proportionate share of the fund was valued at $10,483. Plaintiff terminated his employment on October 5, 1979, and instituted this action in February 1980.
Pertinent provisions of the contract read:
“AGREEMENT . . . [between] Cahn Electric Company, Inc., hereinafter called the Corporation, and J.A. Brocato, J.A. Brown, G.A. Burton, Abry S. Cahn, Jr., T.H. Chiles and R.C. Jackson, . . . called the joint venturers.
“Whereas Cahn Electric Company, Inc., in appreciation for loyal service and to provide security for certain deserving employees, will pay special bonuses from time to time as profits warrant to certain employees . . . with the understanding that seventy percent (70%) of such bonuses are to be deposited to the joint venture herein set up. The company will include the amount of this bonus on the employees W-2 form for such year. The amount of the bonus not deposited to the joint venture (thirty percent) shall be retained by the employee to apply to the payment of income tax on this special bonus. The company may pay this bonus in two checks to each employee to facilitate endorsement to the Joint Venture account.

“(1) The joint venturers of the corporation hereby form this joint venture to serve as a retirement investment fund for the participants.
* * * * * *
“(2) Contributions to the venture will be paid by Cahn Electric Company Inc. in the manner stated above. Such contribution will be irrevocable and cannot revert to Cahn Electric Company, Inc.[2]
“(3) The funds will be totally vested at such time as the employees retire at or after the age of 65; becomes totally disabled in which he is incapable of performing employment with the company or upon death. Should an employee terminate his employment for any reason other than those stated above, he will forfeit his entire interest in the fund to the remaining joint venturers.
* * * * *
*836 “(6) Should a member withdraw before retirement and forfeit his share, the value of such member’s share will be prorated among the other members on the percentage of their ownership.
% sfc :Jc * * sjt
“(8) This agreement shall terminate and funds in the joint venture distributed to the joint venturers on the basis of their percentages to the total value of the fund on the happening of any of the following events:
“(a) All joint venturers have retired, deceased, or left the employment of Cahn Electric Company, Inc.
“(b) Cahn Electric Company, Inc. desires to discontinue contributions to the retirement fund and ask[s] that the joint venture be terminated.
“(c) Dissolution of Cahn Electric Company, Inc. or sale of its assets or stock to another company.
“(d) By mutual agreement of all parties to this agreement.
“(9) Additional members may become a party to this joint venture from time to time at the discretion of the corporation.
“(10) Nothing in this agreement contained shall be construed as giving any person whomsoever any legal or equitable right against the Committee, Cahn Electric Company, Inc., its stockholders, officers or directors, except as the same shall be specifically provided for in this agreement. Nor shall anything in this agreement give any participant or other employee the right to be retained in the service of Cahn Electric Company, Inc. and the employment of all persons by Cahn Electric Company, Inc. shall remain subject to termination by them to the same extent as if this agreement had never been executed.
“(11) No member of this agreement shall have the right to assign or transfer his interest hereunder nor shall his interest be subject to claims of his creditors, it being understood that all provisions of this agreement shall be for the exclusive benefit of those designated herein.
* *
Plaintiff accepted this invitation of January 1, 1973, to become a participant in the fund:
“Attached hereto is a copy of the CAHN ELECTRIC COMPANY INC. RETIREMENT INVESTMENT FUND (A Joint Venture) . . .
“In accordance with paragraph 9 the management would like to invite you to participate with the other executives in this venture. To become a party to this agreement you should sign one copy of this letter and return same to me. By so doing you indicate that you agree to all of the rules as set forth in the attached agreement and make yourself a party to that agreement.
“Should you become a party to the joint venture we will give you a special bonus this year of $880.00 of which $600.00 will be invested in the fund and you will retain $280.00. You should declare the $880.00 as income for 1972. The $280.00 retained is to help defray the tax you will probably have to pay.
“Although there is no guarantee, we plan to make additional investment in your behalf in the future.[3] By so doing we hope to build a significant retirement benefit for your family. This is one way we have to show our appreciation of your loyal service.”
The employer’s CPA explained that the plan in question was not an IRS qualified retirement plan under which the employer contributes money directly to a fund or trustee to provide retirement benefits to most or all of the employer’s employees who earn credits which periodically vest in the employee. The employee is not taxed by IRS until the benefits are paid upon the employee’s death, disability, or retirement. The testimony indicated that Cahn Electric Co., Inc. has a qualified retirement plan for *837 its employees. The unqualified plan in question, however, included only 7 of 38 employees when it was created. It was also explained that an employee who resigns his employment before retirement does not forfeit retirement credits which have vested in him under a qualified plan even though the vested benefits do not have to be paid the resigned employee until he reaches retirement age.
Morse observes that deferred vesting and resulting forfeiture exists in many of the retirement plans affecting public employees who resign their employment before retirement. 344 So.2d at pp. 1366, 1369-1370. We observe that under such plans, an employee who resigns his employment before retirement age does not forfeit the amounts that he has contributed toward his retirement benefit. Compare Morse, 344 So.2d at p. 1366.
It is true that Morse emphasized the fact that Morse’s employer fired him, preventing him from continuing his employment and causing the forfeiture of future annual installments of a sum which had previously vested in Morse, not as a gratuity, but in the nature of delayed or deferred compensation for services previously rendered the employer. The crux of the Morse holding, as we understand it, is that the strong public policy of LRS 23:634 will be applied to avoid a forfeiture of deferred or vested compensation paid or credited to an employee for services previously rendered when the employee’s employment is terminated before retirement.
On rehearing Morse said that
“. . . [A]ll of what we said in our original opinion is correct and applicable to the controverted provisions of the supplemental compensation plan.” 344 So.2d at p. 1368.
Morse originally said that
“The provisions [of LRS 23:623, 640] together apply literally only to wages payable under written contracts of employment and to fringe benefits payable under collective bargaining agreements. Nevertheless, the public policy so expressed includes, within its scope . . . clauses ... to cause forfeiture or to prevent vesting of deferred compensation credits otherwise earned by the employee.” 344 So.2d at p. 1359. Emphasis supplied.
Here the contract in question is between the employer and the employees whom the employer selects at its discretion. The employee who is selected is effectively told that if he agrees to sign the contract containing the forfeiture clause the employer will pay him a special bonus, for services which he has rendered, but he will be required to contribute 70 percent of the bonus to a common investment fund, which some other employees, receiving a like bonus and also contributing to the fund, will invest and manage, and which will eventually be paid as directed upon the earlier occurrence of either his death, disability, or retirement. In summary, the bonus is paid by the employer to the employee for past services upon the condition that the employee agrees to contribute 70 percent of that bonus to the investment fund and to forfeit that contribution and whatever it earns if the employee terminates his employment for any reason other than death, disability, or retirement at age 65. These conditions are imposed by the employer in the contract.
There is no prohibition against an employer paying a bonus to an employee conditioned upon that employee’s long and faithful service. Knight v. Oden, 282 So.2d 612 (La.App.1st Cir. 1973). A resigning employee, however, apparently cannot compel an employer to continue to pay a bonus which is conditioned upon continued employment. See Knight, supra, and case note, 52 Tulane L.R. 427 (1978). Similarly, an employer apparently may not recover a bonus paid an employee and earned under an agreement that the employee would share in the employer’s gross sales above a stated ceiling. See United Shoe Stores Co. v. Dryer, 16 La.App. 605, 135 So. 50 (2d Cir. 1931).
This plaintiff employee is not seeking to compel the employer to pay a bonus and is *838 not seeking to enforce a monetary right to deferred compensation directly set aside by the employer under a retirement plan which contains contractual conditions for the periodical earning and vesting of credits toward the retirement of the employee. It has been observed that almost uniformly, courts have limited receipt of this type deferred compensation to the retirement plan and have denied recovery of these unvested credits to an employee whose employment is terminated before meeting the contractual terms of the retirement plan, whether or not the termination is attributable to the employee’s fault. See 52 Tulane L.R., supra, at p. 429 and cases cited.
Here, plaintiff is seeking to recover the contribution he has made from bonuses periodically paid him by his employer to a retirement fund. The bonus was paid annually between 1973 and 1979 for the employee’s faithful service to the employer during the year before. The employer required the employee, as a condition of receiving the bonus, to agree that he would contribute 70 percent of the bonus to the common fund and that he would forfeit the amount contributed to the common fund if he resigns his employment before retirement at age 65. Under these circumstances, the bonuses paid the employee for past services, like the awards earned under the Morse circumstances, are earned compensation akin to wages protected by the strong policy of § 634. A contractual provision, exacted from the employee by the employer, which results in the employee forfeiting the contribution he has made under the exacted contract, falls squarely within the prohibition of § 634 and cannot be enforced against this plaintiff. Morse, supra. See and compare cases cited and discussed in annotation: “Rights and liabilities as between employer and employee with respect to general bonus or profit sharing plan,” 81 A.L.R. 2d 1063, as supplemented.
Nothing we have said here prevents an employer from designing and contributing directly to an employee retirement plan which contains the scheme of deferring compensation and vesting of credits based on longevity and continuity of service. We hold only that an employer may not pay an employee a bonus, which is taxable to the employee, and is for past services rendered, and contractually require that employee to contribute a portion of that bonus to a common fund and to forfeit that contribution if the employee terminates his employment for any reason other than death, disability, or retirement before a stated age.
The judgment appealed is reversed and, accordingly, judgment is hereby rendered in favor of plaintiff, Stephen E. Langford, and against defendant, Cahn Electric Company Inc. Retirement Fund, for the full amount of contributions made to the defendant fund by the plaintiff during the time of his employment with Cahn Electric Company, Inc., together with all earnings respectively accruing from such contributions by plaintiff to the date of judicial demand, plus legal interest on the value of plaintiff’s proportionate interest in the fund from date of judicial demand, and for all costs of these proceedings in the district court and in this court.
REVERSED and RENDERED.

. “No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.”

. Contributions to the venture were not paid by the employer. The employer paid bonuses to the selected employee and the employee, as a condition of receiving the bonus, contributed to the venture.

. Again, the employer did not directly invest in the fund on behalf of the employee. The employee was required by the contract to invest a portion of the bonus paid directly to him by the employer.