DIXON, Chief Justice.
Calvin J. Cornet, Jr. sued Cahn Electric Company, Inc. and Cahn Electric Company, Inc. Retirement Investment Fund to recover his interest in the Fund amounting to $3,664.35. The district court and the Court of Appeal, 424 So.2d 367 (La.App.1982), relying on an earlier case involving this same Fund, found for the plaintiff. We granted writs to review this decision. 427 So.2d 448 (La.1983).
The case was tried on stipulated facts. In 1967 Cahn Electric Company management decided that the company needed to develop a plan to encourage key employees to stay with the company until retirement rather than leave for other employment. The company had retirement and bonus plans covering all employees. Their accountant was consulted for the purpose of devising such a plan for key employees only.
The accountant advised that the plan could not be a “qualified” plan under IRS rules and regulations because only key employees would participate, and thus the company would not be allowed a tax deduction for contributions. To circumvent this problem, a plan was devised whereby key employees would be invited to join a joint venture (the Fund). If the employee accepted the invitation, the company would pay special bonuses to the employee on the conditions set forth in the joint venture agreement. The pertinent provisions of the contract read:
“AGREEMENT made December 1, 1967, among Cahn Electric Company, Inc., hereinafter called the corporation and [six key employees], hereinafter sometimes called the joint venturers.
Whereas Cahn Electric Company, Inc. in appreciation for loyal service and to provide security to certain deserving employees will pay bonuses from time to time as profits warrant to certain employees of Cahn Electric Company, Inc. with the understanding that such bonuses are to be deposited in the joint venture herein set up. The company will include the amount of this bonus on the employees W-2 for such year and will in addition thereto pay to the employee an additional amount not to exceed one-third of such bonus for payment of the federal income tax on the bonus deposited in the joint venturers account, such amount also to be included in employees’ W-2.
It is therefore agreed:
(1) Purpose:
The joint venturers of the corporation hereby form this joint venture to serve as a retirement investment fund for the participants.
(2) Contributions:
Contributions to the venture will be paid by Cahn Electric Company, Inc. in the manner stated above. Such contributions will be irrevocable and cannot revert to Cahn Electric Company, Inc.
*1054 (3) Vesting
The funds will be totally vested at such time as the employees retire at or after the age of 65; becomes totally disabled in which he is incapable of performing employment with the company or upon death. Should an employee terminate his employment for any reason other than those stated above, he will forfeit his entire interest in the fund to the remaining joint venturers.”
Cornet joined Cahn Electric in 1972. On January 4,1977 he was invited to become a member of the joint venture. The text of the letter, signed by the existing members of the joint venture, read as follows:
“Dear Calvin:
Attached hereto is a copy of the CAHN ELECTRIC COMPANY INC. RETIREMENT INVESTMENT FUND (A Joint Venture) which became effective December 1, 1967.
In accordance with paragraph 9 the management would like to invite you to participate with the other executives in this venture. To become a party to this agreement you should sign one copy of this letter and return same to me. By so doing you indicate that you agree to all of the rules as set forth in the attached agreement and make yourself a party to that agreement.
Should you become a party to the joint venture we will pay a special bonus to you as per the 2nd paragraph on page one of the agreement. Although there is no guarantee we plan to make additional investments in your behalf in the future. By so doing we hope to build a significant retirement benefit for your family. This is one way we have to show our appreciation of your loyal service.”
Cornet signed a copy of the letter on January 5, 1977 and received bonuses for the years 1978, 1979 and 1980, retaining checks for 30% of each bonus and endorsing checks for 70% over to the joint venture. Cornet voluntarily left his employment with Cahn Electric Company on October 2, 1981 to seek other employment and made a demand for his interest in the joint venture. The demand was rejected on the basis that the agreement provided that a member of the joint venture would forfeit any interest in the Fund if he voluntarily terminated employment with Cahn Electric.
In 1977 this court decided the case of Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1977). Morse was a participant in two distinct plans offered by McDermott: the Supplemental Compensation Plan and the Retirement Plan. Under the Supplemental Compensation Plan, Morse had received “current awards” in four consecutive years to “reward those who contributed to the increased productivity of the company and to the increased income which the company produced thereby.” Current awards were paid 20% in cash the first year with the balance payable in four equal annual installments on July 15th of succeeding calendar years. The Supplemental Compensation Plan provided as a condition to receiving the annual installments that the employee had to remain in the continuous employment of the company until the July 15th date. However, the committee administering the plan had the discretion to waive the continuous employment requirement.
Under the terms of the Retirement Plan, no funds were awarded to employees or set aside in employee accounts during the years of employment. Contributions were made to the trust fund as were required to maintain the fund on a sound actuarial basis. An employee would receive benefits upon retirement based on length of service and other factors, provided he had at least fifteen years of service with the company and had reached retirement age.
In Morse, the employee’s service with the company was terminated by McDermott because of an economic downturn. Morse filed suit to recover his remaining annual installments under the Supplemental Compensation Plan and the contributions made by McDermott to the Retirement Plan on account of his employment. On original hearing, this court invalidated the forfeiture provisions of both plans as “... contrary to public order and public policy, and unenforceable, if sought to be applied in a *1055 circumstance where, by the unilateral act of the employer, the employee is prevented from performing his part of the bargain to complete vesting of deferred compensation benefits.” Morse v. J. Ray McDermott & Co., supra at 1358. On rehearing this court upheld the forfeiture (non-vesting) provision of the Retirement Plan but found unenforceable the forfeiture provision of the Supplemental Compensation Plan. The court noted that benefits under the Retirement Plan were not “earned” by the employee, and public policy, as evidenced by Louisiana statutes creating or approving retirement plans including non-vesting provisions, did not require payment of benefits to terminated employees. However, the Supplemental Compensation Plan gave the employee a “contractual right” to receive the remaining installments of current awards which were considered compensation for past productivity. A supplemental cause or motive for the plan was to induce the employee, for the benefit of the company, to continue his employment with the company, but this requirement could be waived by the committee. Morse was ready and willing to continue his employment, but was prevented from doing so by the company. Under C.C. 2040 the condition of continuous employment was considered fulfilled and the failure of the committee to waive the requirement was an abuse of right.
The public policy referred to in Morse against forfeiture' of earned compensation is contained in R.S. 23:634, enacted by Acts 1914, No. 62, § 1:
“No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.”
By its very terms, this section applies equally to discharges and to voluntary terminations of employees. The question presented by this case is whether this public policy prohibits enforcement of the joint venture agreement entered into by Cornet.
On August 25, 1981 the Court of Appeal rendered its decision in Langford v. Cahn Electric Company, Inc., 403 So.2d 833 (La.App.1981). Langford had also accepted membership in the joint venture and then voluntarily terminated his employment with Cahn Electric. The court found the crux of this court’s decision in Morse v. J. Ray McDermott & Company, Inc., supra, to be that “... the strong public policy of LRS 23:634 will be applied to avoid a forfeiture of deferred or vested compensation paid or credited to an employee for services previously rendered when the employee’s employment is terminated before retirement.” 403 So.2d at 837. The Court of Appeal considered the money invested in the Fund as having been contributed by the employee and, therefore, similar to the earned compensation in the Supplemental Compensation Plan in the Morse case; as such, it fell squarely under the provisions of 23:634, and a contract requiring forfeiture was unenforceable as against public policy.
In the present case, the Court of Appeal reiterated its holding in Langford. The court considered the pivotal question to be whether the bonuses were earned by the employee for past services rendered and paid by the employer. Quoting Langford, the court stated:
“ ‘Nothing we have said here prevents an employer from designing the contributing directly to an employee retirement plan which contains the scheme of deferring compensation and vesting of credits based on longevity and continuity of service. We hold only that an employer may not pay an employee a bonus, which is taxable to the employee, and is for past services rendered, and contractually require that employee to contribute a portion of that bonus to a common fund and to forfeit that contribution if the employee terminates his employment for any reason other than death, disability, or retirement before a stated age.’ ” 424 So.2d at 368.
*1056 The purpose of the plan was to provide additional benefits to key employees in order to encourage long term employment with the company. Employees were not required to participate in the plan, though there appears to be no reason why participation would be declined by an invited employee. It was admitted in argument before this court that a participating employee would neither gain nor lose any money by participating in the plan if the amount of his interest were forfeited since the company provided enough money to the employee to pay the tax on the amount of the bonus.
The fact that the contributions were paid to the venture indirectly by way of the employee does not necessarily make the contributions “wages” within the meaning of 23:634. Cornet and other participants in the plan never had control over 70% of the funds they received. Payment of the bonuses was contingent on the employees’ accepting membership in the plan and in their endorsing the 70% check over to the joint venture. The method selected by the employer for making contributions was the one which allowed the employer the greatest federal tax advantages.
Plaintiff argues that to allow Cahn Electric to maintain such a plan allows the company to circumvent the provisions, and public policy, of 23:634, and thereby permits the company to do indirectly what it could not do directly. Such an argument requires acceptance of the notion that every benefit flowing from an employer to an employee comes within the concept of “wages,” or payment in lieu of wages, under 23:634. Plaintiff’s argument defines “wages” too broadly.[1]
Córnet was paid his regular salary and participated in the company’s regular retirement and profit sharing plans. The funds contributed to the joint venture were clearly above and beyond Cornet’s wages. There is no evidence in the record to indicate that these contributions were bargained for[2] by Cornet or that Cornet would have received additional wages had he not joined the joint venture.
The contributions involved here are readily distinguishable from the current awards under the Supplemental Compensation Plan in the Morse case. There, the awards “were in the nature of delayed compensation, or pay, for performed services during the periods for which each contribution [to the reserve] was made.” Morse v. J. Ray McDermott & Co., Inc., supra at 1368. Promoting continued employment was a supplemental motive. Where McDermott’s unilateral act prevented the employee from receiving delayed compensation when it had the discretionary power to pay the deferred portions of his earned compensation, considerations of justice, fair play and public policy against wage forfeitures prevented McDermott’s supplemental motive of promoting continued employment from overriding the principal motive of compensating employees. In contrast, Cahn Electric’s principal motive was the encouragement of continued employment through the promise of an additional retirement benefit. Where Cornet voluntarily terminated his employment before retirement, it was he who prevented fulfillment of the principal motive of the plan, and the supplemental motive of providing an additional retirement benefit will not override the principal motive.
Under the terms of the plan, Cornet had no contractual right to receive any money from the Fund except upon retirement (from Cahn Electric) at or after age sixty-five, upon disability, or upon death. In the Morse case we held that provisions delaying eligibility for benefits were not prohibited by public policy, as evidenced by legislatively approved or created retirement plans.
Since the joint venture agreement in this case does not involve the forfeiture of wages, it is not contrary to the statute, nor to public policy, and its provisions are bind *1057 ing on the parties. “Agreements legally entered into have the effect of laws on those who have formed them.... ” C.C. 1901. Cornet has no right, under the terms of the agreement, to recover any money from the Fund when he voluntarily terminates employment with Cahn Electric Company. Langford v. Cahn Electric Company, Inc., supra, is overruled.
For the foregoing reasons, the decision of the Court of Appeal is reversed. Plaintiff’s case is dismissed at his costs.
WATSON and LEMMON, JJ„ dissent.
DENNIS, J., dissents with reasons.

. “wage — a payment usu. of money for labor or services usu. according to contract and on an hourly, daily, or piecework basis ...” Webster’s Seventh New Collegiate Dictionary, G. & C. Merriam Co., 1965.

. See R.S. 23:640 which includes within wages fringe benefits payable under collective bargaining agreements with labor organizations.