# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 24-259


**MARK ALLAN ATKINS, ET AL.**

**VERSUS**

**CB&I, LLC**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2019-0839
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Sharon Darville Wilson, Judges.


**REVERSED AND RENDERED.**

**Edward J. Fonti**
**Jones, Tête, Fonti & Belfour, L.L.P.**
**Post Office Box 1930**
**Lake Charles, LA   70602-1930**
**(337) 439-8315**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
   **Mark Allan Atkins**
   **Allen Wayne Eddins, Jr.**
   **Neland Hardy Singletary**
   **Chase Lloyd Somers**

**Christopher E. Moore**
**Ogletree, Deakins, Nash, Smoak & Steward, P.C.**
**701 Poydras Street, Suite 3500**
**New Orleans, LA   70139**
**(504) 648-3617**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **CB&I, LLC**

**Andrew J. Halverson**
**Milling Benson Woodward**
**325 Settlers Trace Boulevard, Suite 201**
**Lafayette, LA   70508**
**(337) 769-6582**
**COUNSEL FOR DEFENDANT/APPELLANT:**
   **CB&I, LLC**

**PERRET, Judge.**

Defendant, CB&I, LLC ("CB&I"), appeals an October 27, 2023 judgment that granted a motion for summary judgment filed by Plaintiffs, Mark Allan Atkins, Allen Wayne Eddins, Jr., Neland Hardy Singletary, and Chase Lloyd Somers (collectively, "the Plaintiffs"), and denied its motions for summary judgment and motion for partial summary judgment. After the trial court determined there was no just reason for delay, and designated the judgment as final pursuant to La.Code Civ.P. art. 1915(B)(1), CB&I appeals.

For the following reasons, we find the trial court erred in granting the Plaintiffs' motion for summary judgment and in denying CB&I's motions for summary judgment. Accordingly, we reverse the judgment of the trial court, and render summary judgment in favor of CB&I, dismissing the Plaintiffs' claims against CB&I with prejudice.

**PROCEDURAL HISTORY AND FACTS:**

On February 19, 2019, the Plaintiffs filed a petition for unpaid wages against CB&I, alleging that they were each employed for three years with CB&I "on the LACC Project in Calcasieu Parish, Louisiana, as a construction worker performing manual labor." The petition states that "[d]uring the period the Plaintiffs were employed by [CB&I], a certain amount of their earned wages for work performed was not paid to Plaintiffs[;]" rather it was placed in a Retention Fund. The Plaintiffs resigned from employment with CB&I in October 2018, and "[a]t the time of each Plaintiff's resignation, each Plaintiff had a substantial amount of earned wages which [CB&I] had placed into the Retention Fund." The petition alleged that CB&I "failed to pay Plaintiffs their earned wages which were placed in the Retention Fund, because the terms of the Retention Fund provided that if an employee quit or was

terminated, the employee forfeited his earned wages which had been placed in the Retention Fund." Thus, the Plaintiffs argued that "[t]he terms of the Retention Fund constitutes an illegal wage forfeiture agreement violative of La.R.S. 23:634A."

CB&I answered the petition, generally denying the Plaintiffs' allegations, asserting that it "did not create a retention fund" and "did not withhold or deduct any wages earned by any of the Plaintiffs." CB&I argued that the "Plaintiffs were paid all wages that were earned by and due to each of them at the time of their respective resignations."

On June 24, 2019, the Plaintiffs filed a first supplemental and amended petition alleging, in pertinent part (emphasis in original) (bold font removed):

6.

During the period the Plaintiffs were employed by Defendant, the Defendant had in place a "Project Completion Incentive" plan which provided:

"CB&I will pay to CRAFT employees who meet the eligibility requirements below a Project Completion Incentive payment equal to five percent (5%) of the employee's total earnings (regular wages and overtime wages) earned while working for CB&I at the LACC/LA MEG-1 Project site, as a retention incentive to continue working on the Project until their role on the project is complete. The Project Completion Incentive is calculated based on total earnings earned by the employee at the Project site beginning the date employment begins at site until the eligible employee is laid off in a reduction-in-force or CB&I transfers the employee from the Project site when employee's role on the project is complete. Employees who quit, transfer or terminate their employment for any other reason are not eligible for the Project Completion Incentive payment. CB&I will pay the Incentive payment to an eligible employee on his/her final paycheck. The payment is subject to normal payroll tax withholdings as well as the federal supplemental earnings rate of 25%."

2

7.

At the time of each Plaintiffs' resignation, each Plaintiff had a substantial amount of earned wages which Defendant had placed in the Project Completion Incentive fund.

8.

During Plaintiffs' employment, Defendant issued weekly paychecks and an "Earning Description" document which showed the exact dollar amount of the Project Completion Incentive bonus earned during the pay period covered by the paycheck.

9.

Upon the ending of each Plaintiffs' employment, Defendant failed to pay each Plaintiff the wages earned by and owed to each Plaintiff pursuant to the Project Completion Incentive plan.

10.

The terms and conditions of the Project Completion Incentive plan which provides that the employee who quits the project is not eligible to receive the Project Completion Incentive payment, is an illegal wage forfeiture term and condition violative of La.R.S. 23:634(A).

11.

By registered letter dated January 25, 2019, each Plaintiff made written demand for payment of all unpaid wages. Defendant failed to respond to the demand letter.

On February 15, 2023, the Plaintiffs filed a motion for summary judgment against CB&I, "in regard to CB&I's illegal refusal to pay Plaintiffs['] five percent of their earned wages when they quit their employment with CB&I." In support of their motion, the Plaintiffs attached the following: (Exhibit A), a check stub for Plaintiff, Mr. Atkins, dated 10/11/2018 for the pay period ending 10/06/2018, showing retention of $5,882.14; (Exhibit B), a check stub for Plaintiff, Mr. Eddins, dated 10/11/2018 for the pay period ending 10/06/2018, showing retention of $4,222.46; (Exhibit C), a check stub for Plaintiff, Mr. Singletary, dated 10/11/2018

3

for the pay period ending 10/06/2018, showing retention of $5,368.27; (Exhibit D), the historical payroll register for Plaintiff, Mr. Somers, a year to date summary for 2018, showing retention of $2,878.59; (Exhibit E), a copy of the Project Completion Incentive; (Exhibit F), the Plaintiffs' January 25, 2019 demand for unpaid wages; (Exhibit G), the Plaintiffs' February 1, 2019 petition for unpaid wages; (Exhibit H), CB&I's May 30, 2019 answer to original petition; (Exhibit I), the Plaintiffs' June 24, 2019 first supplemental and amended petition; (Exhibit J), the March 22, 2021 Fifth Circuit Court of Appeal remand to state court; (Exhibit K), the July 25, 2022 pre-trial order; (Exhibit L), the historical payroll register for Plaintiff, Mr. Somers; and (Exhibit M), a copy of LACC/LA MEG-1 Project "Statement of Understanding."

On March 10, 2023, CB&I filed a motion for summary judgment, arguing that the Plaintiffs admitted that they resigned from their employment before the LACC Project was complete and, therefore, they did not satisfy the eligibility requirements provided in the Project Completion Incentive. Additionally, CB&I argues that "the eligibility provisions of the Project Completion Incentive are not void and do not run afoul of Revised Statute[s] 23:634 because Atkins, Somers, and Eddins ceased their employment voluntarily, rather than as a result of any unilateral action by CB&I."

In support of its motion, CB&I attached the following: (Exhibit A), excerpts from the LACC Project Work Rules; (Exhibit B), acknowledgements of the Project Work Rules Agreement, all signed in 2017 by Mr. Atkins, Mr. Somers, and Mr. Eddins; (Exhibit C), excerpts of Mr. Atkins' deposition; (Exhibit D), excepts of Mr.

4

Somers' deposition; (Exhibit E), excerpts of Mr. Eddins' deposition; and (Exhibit F), excerpts of Mr. Haga's deposition.[1]

On March 10, 2023, the Plaintiffs filed a second motion to supplement and amend the petition for unpaid wages; however, this second amended petition merely provided additional details regarding Plaintiff Douglas Edward Haga, who did not file the motion for summary judgment and who was dismissed from this matter, with prejudice, on June 14, 2023.

On June 7, 2023, CB&I filed a motion to supplement its motion for summary judgment, arguing that the "Plaintiffs admitted that they [did] not meet the eligibility requirements of the Project Completion Incentive, and therefore did not earn the incentive payment thereunder." In support, CB&I filed the following supplemental exhibits: (Exhibit G), the Plaintiffs' original petition for unpaid wages; (Exhibit H), CB&I's answer; (Exhibit I), the Plaintiffs' first supplemental and amended petition for unpaid wages; (Exhibit J), notice of removal; (Exhibit K), answer to first supplemental and amended petition; (Exhibit L), ERISA Case Order; (Exhibit M), the Plaintiffs' memorandum in response to the court's order that the Plaintiffs respond to Plan Administrator's Decision based on the Administrative Record; and (Exhibit N), the ruling and opinion by the United States Court of Appeals for the Fifth Circuit.

On June 22, 2023, CB&I filed an opposition to the Plaintiffs' motion for summary judgment and objected to the Plaintiffs' Exhibits A, B, C, and L, as not being authenticated. CB&I argued that the "Plaintiffs acknowledge the 'retention'

_____

[1] In its motion, CB&I argues that the Project Completion Incentive is not applicable to Plaintiff, Douglas Edward Haga; however, we note that Mr. Haga did not file the motion for summary judgment because he did not work on the LACC Project.

payment they seek in this case is the retention incentive payment provided by the Plan that CB&I adopted for craft employees who completed their role on the LACC Project" and that "Plaintiffs unequivocally admitted in this case that their resignations rendered them ineligible to receive the retention incentive payment[.]" In support of its opposition, CB&I attached the Plaintiffs' depositions, a copy of the Project Work Rules, the Plaintiffs' acknowledgments of the Project Work Rules Agreement, the Erisa Case Order, the Plaintiffs' memorandum in response to the court's order that the Plaintiffs respond to Plan Administrator's Decision based on the Administrative Record, and the ruling and opinion by the United States Court of Appeals for the Fifth Circuit.

On June 22, 2023, CB&I also filed a motion for summary judgment to dismiss the claims of Plaintiff, Mr. Singletary. CB&I argues that Mr. Singletary "readily admits he and his fellow Plaintiffs are 'not eligible for the Completion Incentive bonus' that forms the basis for their claims 'because they quit' their employment with [CB&I]." CB&I requests, on that basis alone, for the court to dismiss Mr. Singletary's claims against it. In support of the motion, CB&I attached the following exhibits: (Exhibit A), excerpt of the LACC Project Work Rules; (Exhibit B), acknowledgements by Mr. Atkins, Mr. Somers, Mr. Eddins, Jr., and Mr. Singletary, in globo; (Exhibit C), excerpts of Mr. Atkins' Deposition; (Exhibit D), excepts of Mr. Somers' Deposition; (Exhibit E), excerpts of Mr. Eddins' Deposition; (Exhibit F), excerpts of Mr. Singletary's Deposition; (Exhibit G), the Plaintiffs' original petition for unpaid wages; (Exhibit H), CB&I's answer; (Exhibit I), the Plaintiffs' first supplemental and amended petition for unpaid wages; (Exhibit J), notice of removal; (Exhibit K), answer to first supplemental and amended petition; (Exhibit L), ERISA Case Order; (Exhibit M), the Plaintiffs' memorandum in response to the

6

court's order that the Plaintiffs respond to Plan Administrator's Decision Based on the Administrative Record; and (Exhibit N), the ruling and opinion by the United States Court of Appeals for the Fifth Circuit.

On June 22, 2023, and June 30, 2024, the Plaintiffs filed oppositions, with attachments, to CB&I's motions for summary judgment and CB&I's supplemental motion for summary judgment. The Plaintiffs argued that La.R.S. 23:634 prohibits what CB&I did when it imposed on the Plaintiffs a contract of employment with terms that required the Plaintiffs to forfeit substantial earned wages because they resigned from their employment with CB&I. The Plaintiffs argue that CB&I's summary judgment should be denied because the Project Completion Incentive Plan is an absolute nullity and violates a rule of public order. In support of their opposition, the Plaintiffs attached, as exhibits: CB&I's payroll records; excerpts from the Plaintiffs' depositions; and the ruling and opinion by the United States Court of Appeals for the Fifth Circuit.

Following a hearing on July 7, 2023, the trial court orally granted the Plaintiffs' motion for summary judgment and denied CB&I's motions for summary judgment. Specifically, the trial court ruling stated, as follows:[2]

THE COURT:

Okay. In the matter just heard, Atkins versus CB&I, the Court is going to grant the Plaintiff's Motion for Summary Judgment and --

. . . .

THE COURT:

-- deny CB&I's, Defendant's Motion for Summary Judgment. I find that [La.R.S.] 23:631 and 634 are applicable here, are involved here and have been violated. I find that these plaintiffs earned wages that were withheld from them. And as part of the project completion

---

[2] A signed judgment was rendered on July 19, 2023.

7

incentive plan and even though they may have agreed to that on the onboarding process or the pre-employment process, that it did -- does violate these provisions and it does constitute a forfeiture in the event that they leave voluntarily if they leave prior to completing their assignment. And while they may have agreed to it, it's against the - - the project completion incentive plan violates public policy[,] and it's null. I think the agreement that they entered into with CB&I is without effect and unenforceable. There are several provisions throughout the briefings that I read that refer to that or spell out in more detail the technicalities of the -- it may be articulated a little bit better than I am now. But it -- I find that it does violate public policy, the forfeiture policy was part of -- I find that the forfeiture policy was part of the terms and conditions of employment. And LARS 23:6334 [sic] is more than applicable. And it talks about employees are entitled to the wages actually earned up to the time of their discharge or resignation and that was not done here. And it did require these employees to forfeit wages if discharged before the contract or -- is completed or their assignments are completed. And I don't think that *Cornet* [*v. Cahn Elec. Co*., 434 So.2d 1052 (La.1983)] saves the day for CB&I. It's a different case. It's a different set up and arrangement. That these -- I do find that these retained amounts are earned wages and I use retained in the sense that they were withheld or not given to them on a regular basis during the pay periods, the applicable pay periods. Even though CB&I orders [sic] that these monies that were withheld were not wages because under 631[,] I find that they were earned wages. And this whole eligibility requirement set up with the retention plan, again, violates -- is inconsistent with public policy, violates public policy and should not be allowed. And I recognize that the employee/employer relationship is one of contract in many instances and such as this, but still, again, it violates public policy. And I can't -- I don't agree that CB&I did not withhold income, earned income, wages, they did. And, again, likewise, quite naturally, I -- the Court finds that these plaintiffs did earn these wages under the circumstances here. And there's been much mentioned about that. The law does not permit parties to agree to anything, excuse me, it does allow parties to agree to anything as long as it does not run afoul of public policy. And I think that's the crux of the matter here. This -- the project completion incentive plan, I understand its -- why it was devised and why CB&I would like to do it as they tried to here. And, again, I think we were talking earlier about just because things may be -- may lead to the same result, it does not necessarily mean that they're the same. That's the *Cornet* case versus what I'm saying here, that is true in some instances. Both, I think both of these CB&I and *Cornet*, in the *Cornet* case, they were trying to devise a way to hold on to employees given the nomadic nature of these type employees. And I don't mean that in a derogatory way. And I think there is something to be said that those who stayed, stayed in order to get the monies that were withheld during the course of their work here. And, who knows, they may have left sooner if this wasn't the set up that they agreed to. And one of the purposes of these provisions is

8

the maintenance of a free and efficient flow of human resources, i.e., employees. That -- they were not physically forced to stay, obviously, but for financial reasons some chose to stay. I can't make that a definitive finding. I'm not going to do that because I can't. But I think it has the potential of having that effect. And that's what troubles the Court and causes me to rule the way I have. CB&I and *Cornet* wanted to increase employee longevity and that's understandable. And I'm sure every -- most companies would like to hold on to the workers, skilled workers, quality workers, valuable workers, as long as they can and not have them leave, especially before a project is completed or their work assignment is completed. Therefore, I find as I have, Plaintiff[s'] Motion for Summary Judgment is granted. Defendant's Motion for Summary Judgment is denied.

On July 19, 2023, CB&I filed a motion to supplement and amend its answer to the Plaintiffs' second supplemental and amended petition for unpaid wages. On that same date, the Plaintiffs filed a motion and order to set a "hearing to determine the wages due each Plaintiff, penalty wages, attorney's fees, legal interest, and cost of these proceedings."

On July 24, 2023, CB&I filed a motion for partial summary judgment, arguing that the "Plaintiffs have no claim and are not entitled to relief under Revised Statute[s] 23:632 unless the Plan is enforceable. This Court's ruling that the Plan is without effect and unenforceable bars Plaintiffs from recovering penalty wages and any other relief under Revised Statute[s] 23:632." Thus, CB&I argues that it is entitled to a partial summary judgment regarding Plaintiffs' claims under La.R.S. 23:632. In support of its partial motion for summary judgment, CB&I attached the following exhibits: (Exhibit A), excerpt of the LACC Project Work Rules; (Exhibit B), acknowledgements by Mr. Atkins, Mr. Somers, Mr. Eddins, Jr., and Mr. Singletary, in globo; (Exhibit C), excerpts of Mr. Atkins' deposition; (Exhibit D), excepts of Mr. Somers' deposition; (Exhibit E), excerpts of Mr. Eddins' deposition; (Exhibit F), excerpts of Mr. Singletary's deposition; (Exhibit G), the affidavit of Monica Hansen; (Exhibit H), the Plaintiffs' memorandum in opposition to CB&I's

motion for summary judgment and opposition to CB&I's supplemental motion for summary judgment; (Exhibit I), the Plaintiffs' reply memorandum to CB&I's opposition to the Plaintiffs' motion for summary judgment; (Exhibit J), CB&I's answer to the Plaintiffs' second supplemental and amended petition; and (Exhibit K), CB&I's supplemental and amended answer to the Plaintiffs' second supplemental and amended petition for unpaid wages.

On July 27, 2023, CB&I filed a peremptory exception of no cause of action, arguing, again, that because the trial court "ruled the [Project Completion Incentive] Plan in question is null, without effect, and unenforceable . . . it has no legal force or effect." CB&I alleges, again, that the "Plaintiffs fail to state a claim for recovery of penalty wages and any other relief under the Louisiana Wage Payment Act, including Revised Statute[s] 23:632."

On September 1, 2023, based on the trial court's July 2023 ruling that CB&I is liable to the Plaintiffs, the Plaintiffs filed a memorandum, with attachments, in support of the retention wages, penalty wages, and legal interest owed to the Plaintiffs by CB&I. According to the Plaintiffs, CB&I allegedly owes "Plaintiff Atkins $47,060.67, Plaintiff Singletary $45,128.74, Plaintiff Eddins $40,563.23, and Plaintiff Somers $35,291.80."

On September 8, 2023, the Plaintiffs filed an opposition, with various attachments, to CB&I's motion to file supplemental and amended answer to the second supplemental and amended petition for unpaid wages. Thereafter, on September 18, 2023, CB&I responded, with attachments, to the Plaintiffs' motion to determine wages due to each Plaintiff, penalty wages, attorney's fees, legal interest, and cost of proceedings.

On September 26, 2023, the trial court held a hearing to address: (1) Plaintiffs' request for retention wages, penalty wages, and legal interest owed to them; (2) CB&I's motion to file a supplemental and amended answer to the Plaintiffs' second supplemental and amended petition for unpaid wages; (2) CB&I's peremptory exception of no cause of action; and (3) CB&I's motion for partial summary judgment. The trial court continued the hearing to October 27, 2023.

On October 27, 2023, the trial judge and the parties agreed that it would be in the best interest of judicial economy for this court to review CB&I's liability before having the trial court address the penalty wages and attorney fees. At that time, the trial court stayed the proceedings and amended the July 19, 2023 judgment to designate it as a final judgment, pursuant to La.Code Civ.P. art. 1915B(1). Specifically, the October 27, 2023 amended judgment granted the "Plaintiffs' Motion for Summary Judgment on the issue of liability of Defendant for all wages due each Plaintiff, penalty wages, attorney's fees, legal interest, and cost of these proceedings, with all amounts to be determined later" and denied CB&I's motions for summary judgment filed on March 10, 2023, and June 22, 2023, and its motion for partial summary judgment filed on July 24, 2023.

CB&I now appeals this judgment, assigning the following two assignments of error:

1. The District Court erred in denying CB&I's Motions for Summary Judgment and Motion for Partial Summary Judgment because there are no genuine issues as to material fact and CB&I [is] entitled to judgment as a matter of law.

2. The District Court erred in granting the Atkins Plaintiffs' Motion for Summary Judgment because the Atkins Plaintiffs were not entitled to a judgment as a matter of law.

11

**STANDARD OF REVIEW:**

The summary judgment procedure is expressly favored in the law and "is designed to secure the just, speedy, and inexpensive determination of every action[.]" La.Code Civ.P. art. 966(A)(2). Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Duncan v. U.S.A.A. Ins. Co.*, 06-363, (La. 11/29/06), 950 So.2d 544. After an adequate opportunity for discovery, "summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment rests with the mover. La.Code Civ.P. art. 966(D)(1). As further stated in La.Code Civ.P. art. 966(D)(1).

> [I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

**DISCUSSION:**

On appeal, CB&I argues that the Plaintiffs willingly agreed to the terms and conditions of the Project Completion Incentive ("the Plan") and understood that in order "to be eligible for the retention incentive, an employee could not resign before his role on the project was complete." CB&I alleges that the Plaintiffs cannot show that they earned the incentive payment because they "judicially confessed they did not earn the payment and did not satisfy the eligibility provisions clearly set forth in the Plan because of their voluntarily resignations." CB&I also argues that the trial

judge erred in applying La.R.S. 23:634, titled "Contract forfeiting wages on discharge unlawful," to invalidate the Plan's eligibility provisions before determining whether the Plaintiffs satisfied their burden of proof under La.R.S. 23:631, titled "Discharge or resignation of employees; payment after termination of employment." In doing so, CB&I argues that the Plaintiffs were "judicially alleviated . . . of having to show they earned the incentive payment."

Alternatively, CB&I argues that even if this court finds the Plaintiffs are due the incentive payment under the Plan, "the Judgment nonetheless must be reversed and the [Plaintiffs'] Revised Statute[s] 23:632 claims dismissed because the Plan would be an absolute nullity without any legal effect."

In response, the Plaintiffs concede that, under the terms of the Plan, they are not eligible for payment because they resigned but the Plaintiffs argue that "[t]he Plan is extremely deceptive . . . [and] it implies that CB&I will pay an incentive payment 'equal to five percent (5%) of the employee's total earnings (regular wages and overtime wages) earned while working for CB&I.'" Instead, the Plaintiffs argue that CB&I retained five percent of their weekly pay and refused to pay them the retention amount unless "CB&I either laid [them] off or transferred the craft employee to another CB&I worksite." Plaintiffs also allege that CB&I required all its craft employees to agree to the terms and conditions of the Plan for them to be hired. Thus, Plaintiffs argue that when CB&I refused to pay them their earned wages upon their departure, the Plan amounted to an illegal wage forfeiture under the Louisiana Wage Payment Act and violated the following statutes: La.R.S. 23:631(A)(1)(b), La.R.S. 23:632, and La.R.S. 23:634(A), all discussed more fully below.

13

As previously mentioned, the Plan, signed by the Plaintiffs in 2017, stated, in pertinent part (emphasis in original) (bold font removed):

> CB&I will pay to <u>CRAFT</u> employees who meet the eligibility requirements below a Project Completion Incentive payment equal to five percent (5%) of the employee's total earnings (regular wages and overtime wages) earned while working for CB&I at the LACC/LA MEG-1 Project site, as a retention incentive to continue working on the Project until their role on the project is complete. The Project Completion Incentive is calculated based on total earnings earned by the employee at the Project site beginning the date employment begins at site until the eligible employee is <u>laid off in a reduction-in-force or CB&I transfers</u> the employee from the Project site when employee's role on the project is complete. Employees who quit, transfer or terminate their employment for any other reason are not eligible for the Project Completion Incentive payment. CB&I will pay the Incentive payment to an eligible employee on his/her final paycheck. The payment is subject to normal payroll tax withholdings as well as the federal supplemental earnings rate of 25%.

The trial court found that the compensation under the retention incentive agreement was owed to the Plaintiffs following their resignation from CB&I because the payments constituted a wage under La.R.S. 23:631 and La.R.S. 23:632. However, for the following reasons, we find La.R.S. 23:631 and La.R.S. 23:632 are inapplicable upon finding that the Plaintiffs were paid one hundred percent of their earned wages. Additionally, the Plaintiffs own testimony reflects that they voluntarily resigned from their employment with CB&I in October 2018, prior to the completion of their roles on the LACC Project, and thus forfeited their one-time lump sum "incentive payment" on their final paycheck.

Louisiana Revised Statutes 23:631(A)(1)(b), titled "Discharge or resignation of employees; payment after termination of employment," provides:

> Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or

14

other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

Louisiana Revised Statutes 23:632, titled "Liability of employer for failure to pay; attorney fees; good-faith exception," provides:

A. Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

B. When the court finds that an employer's dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer's failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.

C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

Louisiana Revised Statutes 23:634(A), titled "Contract forfeiting wages on discharge unlawful," provides:

A. No person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.

A contract is interpreted by determining "the common intent of the parties." La.Civ.Code art. 2045. It further has "the effect of law for the parties and may be

15

dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith." La.Civ.Code art. 1983. "The employer-employee relationship is a contractual relationship. As such, an employer and employee may negotiate the terms of an employment contract and agree to any terms not prohibited by law or public policy." *Newsom v. Global Data Sys., Inc.*, 12-412, 12-413, p. 4 (La.App. 3 Cir. 12/12/12), 107 So.3d 781, 785, *writ denied*, 13-429 (La. 4/5/13), 110 So.3d 595.

In *Cornet v. Cahn Electric Co., Inc.*, 434 So.2d 1052 (La.1983), the plaintiff was denied his interest in a retirement investment fund (a joint venture) when he voluntarily left his employment before he was eligible for retirement even though he was required to contribute seventy percent of each of his bonuses to the investment fund. Under the terms of the joint venture, the plaintiff "had no contractual right to receive any money from the Fund except upon retirement (from Cahn Electric) at or after age sixty-five, upon disability, or upon death." *Id.* at 1056. The Louisiana Supreme Court found that the joint venture agreement did "not involve the forfeiture of wages, it is not contrary to the statute, nor to public policy, and its provisions are binding on the parties." The court concluded that the plaintiff had "no right, under the terms of the agreement, to recover any money from the Fund when he voluntarily terminate[d] employment with Cahn Electric Company." *Id.* at 1057.

In *Boudreaux v. Hamilton Medical Group, Inc.,* 94-879 (La.10/17/94), 644 So.2d 619, the Louisiana Supreme Court addressed the definition of "wages" as used in La.R.S. 23:631 and 23:632. In *Boudreaux*, the plaintiff had been involuntarily terminated from his position. The plaintiff's employment contract provided for "a sum of money" to be paid upon involuntary termination, and he argued that said sum constituted "wages" under La.R.S. 23:632. *Id.* at 622. The employer objected,

contending that the sum of money was a "one time" payment not due until involuntary termination, and was therefore not wages. *Id.* The supreme court agreed with the employer, stating in pertinent part:

> These statutes, being penal in nature, must be strictly construed and their provisions yield to equitable defenses. *Mitchell v. First National Life Insurance Co. of La.*, 236 La. 696, 109 So.2d 61, 63 (1959); *Clevy v. O'Meara*, 236 La. 640, 108 So.2d 538, 539 (1959). The statutes refer to "wages" and subject the employer to the payment of penalties and attorney fees if the wages are not paid timely. *In Mason v. Norton*, 360 So.2d 178, 180 (La.1978), we stated that these statutes are designed to compel prompt payment of wages upon an employee's discharge or resignation. The term "wages" is defined as money that is paid or received for work or services, as by the hour, day or week. Webster's New Universal Unabridged Dictionary 1604 (1992). In La.R.S. 23:631, the "amount due under the terms of employment" is modified by the phrase "whether the employment is by the hour, day, week, or month, . . ." We have held that this phrase in La.R.S. 23:631 "whether the employment is by the hour, day, week, or month" refers to the pay period for the compensation. *Mason v. Norton*, 360 So.2d at 180. In *Stell v. Caylor*, 223 So.2d 423, 426 (La.App. 3d Cir.), *writ refused*, 254 La. 778, 226 So.2d 770 (1969), the court stated:

>> [T]he inclusion in the statute of the words "whether the employment is by the day, week or month" seems clearly to signify that only amounts due as wages are contemplated. Otherwise these words would be superfluous. If the statute is intended to cover all amounts due by the employer to the employee, regardless of whether they are wages, there is no need for the statute to specify the pay periods of wages.

> Since the phrase in La.R.S. 23:631 "any amount then due under the terms of employment" is modified by the phrase "whether the employment is by the hour, day, week, or month" (pay period), it is obvious that "the amount then due under the terms of employment" set forth in La.R.S. 23:631 refers to wages which are earned during a pay period. In other words, "terms of employment" refers to a particular pay period. Therefore, only compensation that is earned during a pay period will be considered wages under the statutes. This interpretation is consistent with the references to "wages" throughout the statutes.

*Id.* at 621–622. Upon finding that "wages[,]" as intended by La.R.S. 23:631 and La.R.S. 632, meant only those wages earned during a pay period, the supreme court held that the compensation provided by the employment contract, which was a one-

17

time payment paid to the plaintiff only upon termination, did not constitute wages and that the plaintiff was not entitled to the statutory penalties and attorney fees provided by La.R.S. 23:632. *Id.*

Similarly, in this case, CB&I's retention incentive agreement at issue provides a one-time lump sum retention incentive payment for all craft employees who remain at work with CB&I through job completion or a reduction in force. The amount of that payment is identified as a payment equal to five percent of accumulated regular and overtime hours earned by the employee over the lifetime of their employment through job completion or reduction in force. Per the terms of the employment agreement, when the condition of job completion or reduction in force is satisfied, the accumulated retention incentive will be paid, subject to taxation and withholding.

The Plaintiffs argue that CB&I's retention incentive unfairly deprives them of earned wages by reducing their earned weekly wages by five percent each week until the condition of job completion or reduction in force occurs. However, a review of the weekly wage information in the record before this court clearly indicates the total number of hours, regular and overtime, that the Plaintiffs work during each pay period, and all that time is included for weekly gross payments from which withholding and taxes are deducted by CB&I. Accordingly, there is no diminution whatsoever of earned wages in the weekly wage reports before the court; rather, the wage reports establish that the Plaintiffs were compensated for one hundred percent of their labor each week. Thus, the Plaintiffs' argument that they are denied some amount of payment of their earned wages is incorrect.

Although the weekly wage records do include a line item for the "Retention" with a running balance of accumulated, year-to-date retention incentive that grows each week, that line item is not included in the calculation of weekly gross wages

subject to taxation. As such, the "Retention" incentive line item does not represent any earned wages that are unpaid. Thus, even if the "Retention" incentive line item is eliminated entirely from the wage reports, there would be no change to the weekly gross wages due to any Plaintiff, as weekly compensation is based on one hundred percent of regular and overtime hours each week.

Moreover, a review of the weekly "Retention" incentive line item in the wage reports indicates that the entry is consistent with the definition of the retention incentive defined in the employment agreement. Specifically, the weekly retention incentive representing five percent of the regular and overtime hours already paid by CB&I to the Plaintiffs is identified along with the accumulated year-to-date retention incentive obligation balance representing CB&I's growing retention incentive obligation when the condition of job completion or reduction in force is satisfied.

We find that this is consistent with CB&I's expressed desire for the Plaintiffs to remain on the job until the condition of job completion or reduction in force is satisfied. As seen in the weekly wage reports, CB&I's retention incentive obligation becomes more valuable as time goes on and the job completion or reduction in force condition is satisfied. This accounting provides the Plaintiffs with the weekly value of CB&I's retention incentive obligation that the Plaintiffs will forgo if they choose to quit employment with CB&I.

The Plaintiffs' testimony also indicates that they understood the Plan and the eligibility requirements. Specifically, Mr. Eddins testified as follows (counsels names and objection omitted):

Q. Okay. What's your understanding of the purpose of the Project Completion Incentive?

19

A. What do I understand? To make sure that everybody came every day and worked as many hours as possible to push the project along, because they had a deadline to hit like any project. It kept people from transferring.

. . . .

Q. And in this case, maybe a retention bonus had some influence as to whether or not you took a job or not, or I don't even know if you looked, but you're saying that the retention bonus would be a factor as to whether you left or not or quit or not?

A. Correct. It was for a lot of people.

. . . .

Q. In terms of work for the Project Completion Incentive, you didn't have to do any work for the incentive itself. You just had to keep returning, right?

A. Well, the way it was explained to us, that it was counting for us for hours worked. That's the way we understood if, and we were never told no different.

So in other words, there's - - returning to work, yeah. I mean, you had to be at work every day, but it was your hours there on the jobsite.

Mr. Singletary also testified about the Plan and how the retention incentive would be paid, as follows:

Q: Okay. What about under the plan; what is - - what does the plan say? What's your understanding under the plan as to when it's due?

A: Let me read it.

Q: Sure.

A: Says, begin - - "The eligible employee is laid off in a reduction in force or CBI transfer the employee from a project site when the employees role on the project is complete."

Q: Okay . . . The retention incentive is paid to you at the conclusion of your role; is that right?

A: Yes, sir, or lay off, a reduction in force, transfer.

Q: So, again, we just follow the rules laid out in the plan, right?

20

A: Yes, sir.

. . . .

Q: . . . What are the eligibility requirements for the Project Completion Incentive?

A: Based on this document?

Q: Yes. Or based on your understanding of the document.

A: Until their role on the project is complete.

Q: Okay. So eligible - - they have to keep working on the project until their role is complete.

A: Yes.

Q: Okay. If employee - - if an employee quits or terminates their employment prior to that, are they eligible for the Project Completion Incentive?

A: Based on this document, no.

The record supports the fact that the Plaintiffs were paid one hundred percent of their earned wages; thus, we find the trial court erred in applying La.R.S. 23:631. Similarly to the *Cornet* and *Boudreaux* cases, CB&I's completion incentive plan does not involve the forfeiture of wages and is neither contrary to La.R.S. 23:631 nor to public policy. Accordingly, the provision in the Plan that states that "[e]mployees who quit, transfer or terminate their employment . . . are not eligible for the Project Completion Incentive payment" is binding on the parties. Because the Plaintiffs acknowledged that they resigned on their own volition before their roles on the LACC Project were completed, we find the Plaintiffs, under the terms of the agreement, have no right to recover the one-time lump sum retention incentive payment.

In conclusion, we find the trial court erred in granting the Plaintiffs' motion for summary judgment and in denying CB&I's motion for summary judgment.

Accordingly, we reverse the judgment of the trial court, and render summary judgment in favor of CB&I, dismissing the Plaintiffs' claims against CB&I with prejudice. Costs are assessed to the Plaintiffs, Mark Allan Atkins, Allen Wayne Eddins, Jr., Neland Hardy Singletary, and Chase Lloyd Somers.

**REVERSED AND RENDERED.**